# EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

In re:
                                                              *
    MAJOR EVENTS GROUP LLC              *        Chapter 11
                                                              *
Debtor                                                  *        Case No: 18-11123 ELF
_____

## AMENDED PLAN OF REORGINIZATION

    Major Events Group LLC ("Debtor") hereby proposes this amended plan of reorganization pursuant to Title 11 of the U.S. Code Section 101 et seq.

## I.  DEFINITIONS

    For the purposes of this plan, the following terms shall have the respective meanings hereinafter set forth. Any term defined in the Bankruptcy Code ("the Code") and not otherwise defined herein shall have the meaning specified in the Bankruptcy Code unless context otherwise requires.

    1.1    "Administrative Claim" means a Claim incurred by the Debtor on or after the Petition Date and before the Effective Date for a cost or expense of administration of the Chapter 11 case allowable under 503(b) of the Code and entitled to a priority under Sec. 507(a)(1) of the Code

    1.2    "Allowed Claim" means (a)a claim that has been allowed by a Final Order; (b)a claim which is specified herein to be an Allowed Claim; or (c)a claim timely filed with the Office of the Clerk of the Court or scheduled by the Debtor in its schedules  as neither unliquidated, disputed or contingent and as to which claim (i)no objection with respect to the allowance thereof has been or shall be interposed within the period of time fixed by the Code, the Bankruptcy Rules ("the Rules") or orders of Court  or (ii)as to which claim either an objection to the claim or an application to amend the schedules with respect to a claim has been interposed, which objection or application has is determined in favor of the holder of such claim. Unless otherwise specified, "Allowed Claim" shall not include interest on the principal amount of such claim accruing from or after the petition date.

    1.3    "Claim" means a claim against the Debtor within the meaning of Section 101(5) of the Code and is  intended  to include, without limitation, any claim, suit, demand, note,

liability, setoff, recoupment or charge, any claim for reimbursement, contribution, indemnity or exoneration.

    1.4   "Claimant" means a person or entity holding a claim or interest.

    1.5   "Class" means a group of claims, consisting of claims which are substantially similar to each other, as classified pursuant to this Plan.

    1.6   "Confirmation Date" means the date on which the Confirmation Order confirming the Plan at or after a hearing convened pursuant to this Plan.

    1.7   "Confirmation Hearing" means the hearing at which the Court considers the confirmation of this Plan.

    1.9   "Confirmation Order" means the Order of the Court confirming the Plan.

    1.10   "Contested Claim" means any clam as to which the Debtor has interposed an objection in accordance with the Code, which objection has not been determined by a final order resolving the objection.

    1.11   "Court" means the United States Bankruptcy Court for the Eastern District of Pennsylvania, or other such court having jurisdiction over the case.

    1.12   "Debtor" means Major Events Group LLC.

    1.13   "Effective Date of the Plan" means the thirty (30) days following the entry of the Confirmation Order unless the Confirmation Order is stayed, in which case it will be the thirty (30) days following the date of the termination of such stay if the Confirmation Order is not reversed prior to the termination of the stay.

    1.14   "Impaired Class" means any class of claims, which is impaired within the meaning of Section 1124 of the Code.

    1.15   "Plan" means this plan of reorganization in its present form or as it may be amended from time to time.

    1.16   "Priority tax claim" means a claim or portion of a claim for which priority is asserted under Sec. 507(a)(3) of the Code. There are no priority tax claims in this Chapter 11 case.

    1.17   "Pro Rata" means with respect to any distribution to the holder of an allowed claim of a particular class of the plan on a particular date, the same proportion that the amount of such allowed claim bears the aggregate amount of all claims of such class.

    1.18   "Secured claim" means a claim that is a) secured by a valid perfected and enforceable lien on assets of the Debtor to the extent of the value of the interest of the holder

of such claim in such assets; or (b)a claim which is specified herein as an allowed secured claim, to the extent of the value of the interest of the holder of such secured claim in such assets.

1.19    "Unsecured claim" means any claim, whether or not disputed, liquidated, contingent or arising out of a state court judgment, other than an administrative, priority or secured claim.

## II. CLASSIFICATION OF CLAIMS

The Claims of the Creditors of the Debtor are divided into the following classes in this plan. Administrative claims are not classified in this plan.

Class 1: Internal Revenue Service, Claim 4-1.

Class 2: Secured Claim 6-1, Select Holdings LLC.

Class 3: Claim 2 City of Philadelphia, Real Estate Taxes and Trash fees.

Class 4: Secured Claims of Taxing Authorities, Claim 1, Pennsylvania Department of Revenue; Claim 3, City of Philadelphia, Water Usage.

Class 5: Secured Claim 7, Hard Money PA.

Class 6: Secured Claims 8 and 9, Earle Hunt.

Class 7: Interest Holders, Antoine Gardiner is sole interest holder of the Debtor.

## III. CLASSES IMPAIRED OR UNIMPAIRED BY THE PLAN

Class 1,3,4, 6 and 7 as described above are not impaired under the plan. Solicitation of acceptance with respect to these classes is not required. Classes 2 and 5 as described above are impaired under the plan and each holder of a claim in such classes is entitled to vote to accept or reject the plan.

## IV. TREATMENT OF CLASSES OF CLAIMS

The Plan divides Claims and Interests into various separate classes. Under the Plan, there are six (7) separate classes of creditors (classes 1 through 7). There are no general unsecured claims.

**Class 1. Internal Revenue Service, Claim 4-1.**
Priority Tax Claims are certain unsecured income, employment and

3

other taxes described by Bankruptcy Code section 507(a)(8). The Bankruptcy Code requires that each holder of such a section 507(a)(8) Priority Tax Claim receive the present value of such Claim in one lump sum if the claim is ultimately allowed after any objection by the Debtor is litigated to conclusion or settled. The Debtor has one Priority Tax Claim, Claim 4, The Internal Revenue Service, in the amount of $100.00. This claim shall be paid in full in the first disbursements after the Plan is confirmed. This Class is unimpaired.

**Class 2.  Secured Claim 6, Select Holding LLC,**

Class 2, Select Holdings LLC, is a secured claim with a mortgage on 1730 W. Indiana, St., Philadelphia, PA. The original balance on this note was due July 18, 2016; the principal balance was $45,000.00. Claim 6-1 was filed by Select Holdings LLC in the amount $89,734.67. Claim 6-1 shall be paid in full from the sale of 327 Walnut St.; the Debtor shall schedule a closing for the sale of this property by March 31, 2019. This Claim is impaired.

**Class 3.    Secured Claims 2-1, City of Philadelphia, Law Department (Real Estate Taxes and trash fees)**

Claim 2, City of Philadelphia, Law Department Tax Unit (Real Estate Taxes and Trash Fees), $56,219.91, shall be paid in full with 9% interest from the date of filing of the petition until paid.

Class Three Claim is unimpaired; this claim receives 100% of the Claim as of the Date of the confirmed plan. The Claim receives the statutory interest until paid in full. The Debtor shall timely file and pay all municipal fees and all taxes from federal and state authorities owed post petition.

**CLASS 4.    Secured Claims 1, Pennsylvania Department of Revenue, and Claim 3, City of Philadelphia, Law Department Tax Unit (Water Usage)**

This class is unimpaired. Claim 1, Pennsylvania Department of Revenue, $4,728.34, shall be paid in full with 6% interest from date of Plan Confirmation.

Claim 3, City of Philadelphia, Law Department Tax Unit (Water Usage), $33,726.23, shall be paid in full with 6% interest from the date of filing of the petition until paid.

Class Four Claims are unimpaired; each claim receives 100% of the Claim as of the Date of the confirmed plan. The Claims receives the statutory interest until paid in full. The Debtor shall timely file and pay all municipal fees and all taxes from federal and state authorities owed post petition.

### CLASS 5. Secured Claim 7, Hard Money PA

Class 4, Hard Money PA is a secured claim with a mortgage on 327 Walnut St., Clifton heights, PA 19138. The original balance on the note is $55,000.00. The Debtor makes a $750.00 payment on this note each month; there are no arrears. The Debtor anticipates selling 327 Walnut Street as a means to fund this plan. The property is worth approximately $155,000.00 and the claim shall be paid at the closing for this property; the closing shall take place no later than March 31, 2019. The Debtor shall pay the $750.00 payment each month until closing; no additional fees are to be paid. This class is impaired.

### Class 6.    Secured Claims 8 and 9, Earle Hunt

Class 5 are secured claims filed by Earle Hunt, the holder of two mortgages on three properties in New Jersey. This claim is not impaired. Claim 8-1 is in the amount of $84,170.01 (arrears are $8,760.43) and Claim 9-1 is in the amount of $53,726.86 (arrears of $5,333.12). The Debtor pays Earle Hunt $1,500.00 each month on these two mortgages since the filing date and is current post-petition. The Debtor shall continue to pay the $1,500.00 each month until the claim is paid in full. The mortgages have matured and the Claimant agreed via stipulation to accept the $1,500.00 each month until paid. The Debtor shall pay this claim at 100% as of the confirmation date; funds for the payment shall come from the sale of four pieces of real property not secured by these mortgages.

### Class 7.    Interest Holders

Class 7 is not impaired. All existing ownership interest, Antoine Gardiner owns 100%, shall be retained by him. Mr. Gardiner shall not receive a distribution until the holders of Classes 1,2,3,4, 5 and 6 are paid in full.

V.    **Implementation of the Plan**

1. <u>Execution of Documents.</u> Prior to the Effective Date, the Debtor is authorized and directed to execute and deliver all documents and to take and to cause to be taken all action necessary or appropriate to execute and implement the provisions of this Plan.

    2. <u>Alterations, Amendments or Modifications</u>. This Plan may be altered, amended, or modified by the Proponent before or after the Confirmation Date, as provided in §1127 of the Bankruptcy Code.

    3. <u>Final Decree.</u> After final distributions are made, the Debtor shall file a motion to close the case and request that a final decree be issued. The Debtor shall file all interim and final plan implementation reports and pay any fees to the Office of the United States Trustee.

    4. **Representative of the Debtor.** Pursuant to section l 123(b)(3)(B) of the Bankruptcy Code, the Reorganized Debtor shall retain and may enforce any and all claims of the Debtor on behalf of, and as a representative of, the Debtor or its estate, including, without limitation, all claims arising or assertable at any time under the Bankruptcy Code, including under 11 U.S.C. §§ 510,542,543,544,545,547,548,549,550,552 and 553.

    5. <u>Plan Funding.</u> The Debtor's Plan shall be funded by the continued sale of real estate and operation of the business. It is anticipated all sales and Plan payments shall occur within 24 months of the confirmation of the Plan. The Debtor shall due all acts necessary to conclude the Plan within 12 months; sales of real estate are subject to unforeseeable events and , in an abundance of caution, the Debtor sets forth a 24 month Plan. The Debtor shall revise the schedule of sale of real estate if, at 18 months from the confirmation of the Plan, sufficient funds have not been generated. The Debtor will market real estate at a reduced rate for 6 months in order to complete the plan. If the Plan cannot be paid in full in 24 months the Debtor shall petition for an addition 6 months to market real estate at a reduced rate.

    The Debtor intends to sell the following pieces of real estate, listed at market rate. costs of sale are anticipated to be 10% of the sale proceeds. The priority of distributions is as follows:

    Class 1, priority tax claim paid in first administrative disbursement following confirmation of the plan.

    Class 2, Secured claim of Select Holding LLC shall be paid with the proceeds of the initial property sale.

    Class 3, Secured claim of taxing authorities. This claims shall be paid with the proceeds from the sale of the second piece of real property.

    Class 4, Secured claims of taxing authorities. These claims shall be paid with the proceeds from the sale of the second piece of real property.

    Class 5, Earle Hunt shall be paid with the next available funds after Class 3.

    Class 6, hard Money PA is secured by 327 Walnut Street, Clifton Heights, PA. Class 5 shall be paid at the closing on the sale of 327 Walnut St.; this property is listed for sale and a closing is scheduled on or about March 31, 2019.

    Class 7, Interest Holder is not scheduled to receive a distribution.

    6. **Properties to Be Sold by the Debtor.** Listed below are the properties to be sold, their respective anticipated sales price, anticipated closing costs and proceeds realized from the sales necessary to fund this plan.

**ADDRESS OF THE REAL ESTATE**                                                                 **MARKET VALUE**

| | |
|---|---:|
| **Residential Real Estate** | |
| 5357 W. Oxford St., Philadelphia, PA  19131 | $105,000.00 |
| 327 Walnut Street, Clifton Heights, PA 19018 | $155,000.00 |
| 113 N. 62nd Street, Philadelphia, PA  19139 | $65,000.00 |
| **Residential/Commercial Real Estate** | |
| 5604 Chew Ave., Philadelphia, PA  19138 | $125,000.00 |
| **Gross proceeds** | **$450,000.00** |
| Costs associated with sale (brokerage fees, transfer taxes, municipal claims associated with sale, estimated at 10%) | $45,000.00 |
| **Amount Realized for Plan Funding** | **$405,000.00** |

Additional funds shall be dedicated from the ongoing rental real estate business.

**VI.        PROVISIONS GOVERNING DISTRIBUTIONS, DISCHARGE AND GENERAL PROVISIONS**

**A.        Distributions**

Major Events Group LLC be the disbursing agent ("Disbursing Agent") herein. The Disbursing Agent shall have the sole and exclusive right to make the distributions required by the Plan. The Disbursing Agent may hold or invest the funds in one or more accounts, provided that all investments shall be made in accordance with section 345 of the Bankruptcy Code. The disbursing Agent shall serve without bond and shall receive no compensation for his duties as the Disbursing Agent.

**B.        Delivery of Distributions**

1.  Distributions and deliveries to holders of Allowed Claims will be made at the addresses set forth on the proofs of claim filed by the holders (or at the last known address). If any holder's distribution is returned as undeliverable, no further distributions to the holder will be made unless and until the Reorganized Debtor is notified of the holder's then current address, at which time all missed distribution will be made to the holder without interest. After one year from the payment date all unclaimed property will become property of the Reorganized Debtor, and the Claim of any holder with respect to such property will be discharged and forever barred.

2.  Means of Cash Payment

Payments made pursuant to the Plan will be in United States funds, by check drawn on a domestic bank or by wire transfer from a domestic bank. All distributions will be made by Debtor.

3.  Time Bar to Cash Payments

Checks issued by the Debtor in payment of Allowed Claims will be null and void if not cashed within ninety (90) days of the date of its issuance. Requests for re-issuance of any check shall be made to the Disbursing Agent by the holder of the Allowed Claim to which the check originally was issued. Any Claim relating to a voided check must be made on or before the later of (i) the first anniversary of issuance, or (ii) ninety (90) days

after the date the check was voided. After that date, all Claims relating to a voided check will be discharged and forever barred and shall be revested in the Reorganized Debtor.

4.  Setoffs

The Debtor may, but will not be required to, set off against any Claim and the payments to be made pursuant to the Plan in respect of the Claim, any Claims of any nature whatsoever the Debtor may have against the Claimant, but neither the failure to do so nor the allowance of any Claim hereunder will constitute a waiver of release by the Debtor of any such claim the Debtor may have against such Claimant.

C.  **Confirmation/Miscellaneous**

1. Except as may be otherwise provided herein, upon the Confirmation Date, all Claims against the Debtor and Debtor-in-Possession shall be satisfied, discharged and released in full; and all holders of Claims and Creditors shall be precluded from asserting against the Debtor, its assets, properties or interest held by it, any other future Claim based upon any transaction or occurrence of any nature that occurred 1prior to the Confirmation Date. Upon confirmation, title to all assets and properties whatsoever of the Debtor and the Debtor-in-Possession shall be retained by and revested in the Reorganized Debtor free and clear of Claims, Liens, encumbrances, security and equitable interests, except as may be otherwise provided by this Plan. The order confirming the Plan shall be a judicial determination of the discharge of the liabilities of a Claim against the Debtor and Debtor-in-Possession, except only as may be otherwise provided for this Plan. Confirmation of the Plan shall satisfy all Claims arising out of any Claim settled and satisfied under the terms of the Plan.

2. After the Effective Date, the Reorganized Debtor shall be entitled to operate its property without any restrictions of the Bankruptcy Code and without any supervision of the Bankruptcy Court.

3. Any check, including interest earned, that is unclaimed for ninety (90) days after distribution will be deemed null and void. Requests for re-issuance of any check shall be made to the Disbursing Agent by the holder of the Allowed Claim to which the check originally was issued. Any Claim relating to a voided check must be made on or before the later of (i) the first anniversary of the Effective Date, or (ii) ninety (90) days after the date the check was voided. After the date, all Claims relating to a voided check will be discharged and forever barred and shall be revested in the Reorganized Debtor.
No default shall be declared under this Plan, unless any payment due under this Plan shall not have been made within thirty (30) days after written notice to the Debtor and counsel for the Debtor of failure to make payment when due under the Plan.

VII.     **EFFECTS OF CONFIRMATION**

    A.  **Discharge of Claims; Injunction**

Except as otherwise expressly provided in the plan, the entry of the Confirmation order shall act to permanently enjoin all persons who have held, hold or may hold claims against the Debtor as of the Confirmation date (a) from commencing or continuing in any manner any action or other proceeding of any kind with respect to any such claim against the Debtor, (b) from the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or property of the Debtor with respect to any such claim, (c) from creating, perfecting or enforcing any encumbrance of any kind against the Debtor thereof, or against the property of the Debtor with respect to any such claim, and (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due from the Debtor thereof, or against property of the Debtor, with respect to any such claim. To the extent, however that the Debtor defaults under the terms of the plan and such default is not cured within thirty (30) days after Debtor and its attorney receive notice of the default as provided for by the plan, the injunction shall be void.

Unless otherwise provided, all injunctions or stays provided for in Chapter 11 cases pursuant to Sec. 362(a) of the Code or otherwise shall remain in full force and effect until the Effective Date at which time the injunction under Section VI of the plan shall be in force.

    B.     **INJUCTION AGAINST INTERFERANCE WITH THE PLAN**

No entity may commence or continue any action or proceeding or perform any act to interfere with the implementation and consummation of the plan and the payments to be made hereunder.

    C.     **RETENTION OF JURISDICTION**

The Court shall retain jurisdiction after the effective date of the plan, until all payments and distributions called for under the plan have been made and until entry of the final decree, with respect to the following matters:

    B.  To hear and determine objections to claims and to allow or disallow any claim.
    C.  To fix and award compensation to parties who may be so entitled.
    D.   To recover all assets and properties of the Debtor, wherever located, to the extent necessary for the consummation of the plan.
    E.  To interpret the provisions of the plan, and to make any order which may be necessary or appropriate to carry out the provisions of the plan.

Dated:  February 18, 2019                        Michael P. Kutzer, Esquire

                                                  */s/ Michael P. Kutzer*
                                                  Michael P. Kutzer
                                                  Attorney at Law
                                                  1420 Walnut Street, Suite 1216
                                                  Philadelphia, PA  19102
                                                  Attorney for the Debtor and
                                                  Debtor in Possession